NOT DESIGNATED FOR PUBLICATION

No. 128,435

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MADIO TORRENCE BAYHA,
*Appellant*.


MEMORANDUM OPINION

Appeal from Leavenworth District Court; GERALD R. KUCKELMAN, judge. Submitted without oral argument. Opinion filed July 31, 2026. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Miranda R. Neal*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.


Before CLINE, P.J., COBLE and PICKERING, JJ.


CLINE, J.: Madio Torrence Bayha was convicted of battery of a correctional officer stemming from his actions during an examination at a hospital. He challenges this conviction by claiming that (1) the jury was not properly instructed on the State's burden of proof regarding his self-defense claim, (2) the prosecutor erred in closing, and (3) the district court erred in denying Bayha's counsel's motion to withdraw. He also alleges the district court erred at sentencing by not awarding him more jail credit. On review, we find no errors which require reversal and therefore affirm Bayha's conviction and sentence.

FACTUAL AND PROCEDURAL BACKGROUND

In May 2023, while incarcerated at the Lansing Correctional Facility, Bayha told staff he had swallowed 100 pills. He was then taken to a nearby hospital for evaluation. Correctional Officers Kevin Allen and Mikayla Taylor transported Bayha to the hospital. Once they arrived, a nurse conducted lab tests and examined Bayha but found no evidence that he took anything. Bayha was then cleared to return to the prison. But when Officer Allen instructed Bayha to put his shirt back on, Bayha refused and moved forward. Bayha charged Officer Allen, tried to grab his left arm, and punched him. At that point, Bayha turned towards Officer Taylor, who yelled that Bayha was reaching for her gun. The nurse called for hospital security and, after some tussling, the officers restrained and cuffed Bayha.

Bayha was charged and tried on two counts of battery of a correctional officer, one for each officer. The jury acquitted him on the charge involving Officer Taylor, but it could not reach a verdict on the charge involving Officer Allen.

The State then retried Bayha on the charge involving Officer Allen. At this second trial, five witnesses testified: Officer Allen, a nurse and a security officer from the hospital, a correctional investigation officer, and Bayha. Bayha asserted that he acted in self-defense because he claimed Officer Allen grabbed his right buttock and groped him as he was getting dressed. Based on Bayha's testimony, the jury was instructed on the legal requirements of self-defense.

The jury in Bayha's second trial found him guilty. The district court sentenced Bayha to 130 months in prison and awarded him 36 days of jail time credit.

REVIEW OF BAYHA'S APPELLATE CHALLENGES

*The failure to specifically instruct the jury on the burden of proof for Bayha's self-defense claim was not clearly erroneous.*

For his first challenge, Bayha submits that the district court clearly erred by failing to provide the jury with an instruction explaining the burden of proof related to his affirmative defense of self-defense. While the jury was instructed on the State's general burden of proof and the legal requirements of the charge and Bayha's self-defense claim, it was not specifically told that the State had the burden to disprove Bayha's affirmative defense.

The State concedes the district court erred by failing to give the affirmative defense burden of proof instruction because it was factually appropriate, given Bayha's testimony, and legally appropriate. See *State v. Qualls*, 309 Kan. 553, 560, 439 P.3d 301 (2019) (finding defendant's testimony sufficed to make the self-defense instruction factually appropriate); *State v. Heiskell*, 8 Kan. App. 2d 667, 675, 666 P.2d 207 (1983) (finding district court erred in failing to give self-defense instruction when defendant was charged with battery of a law enforcement officer and obstructing legal process). That said, the State contends the error was not clearly erroneous.

*Standard of Review and Relevant Legal Framework*

When, as here, a party asserts an instruction error for the first time on appeal, "the failure to give a legally and factually appropriate instruction is reversible only if the failure was clearly erroneous." *State v. Willis*, 319 Kan. 663, 671, 557 P.3d 424 (2024); see K.S.A. 22-3414(3). Our Supreme Court has said, for the failure to be clearly erroneous, "the court must be firmly convinced the jury would have reached a different verdict if the permissible instruction had been given. The party claiming clear error has the burden to show both error and prejudice." 319 Kan. at 671.

3

*The Jury Instructions Given at Bayha's Trial*

Before examining the nature of the court's error, we note the jury was given the general burden of proof instruction at trial, which stated:

"Instruction No. 6

"The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty unless you are convinced from the evidence that he is guilty.

"The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find the defendant guilty."

See PIK Crim. 4th 51.010 (2024 Supp.).

The district court also instructed the jury on what the State had to prove to convict Bayha:

"Instruction No. 8

"The defendant is charged with battery on a state correctional officer. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

1. The defendant knowingly caused physical contact with Kevin Allen in a rude, insulting or angry manner.

2. The defendant was in the custody of the secretary of corrections.

3. Kevin Allen was a state correctional officer.

4. Kevin Allen was engaged in the performance of his duty.

5. This act occurred on or about the 8th day of May, 2023, in Leavenworth County, Kansas.

"The state must prove the defendant committed the crime knowingly. A defendant acts knowingly when the defendant is aware of the nature of his conduct that

4

the state complains about, or, of the circumstances in which he was acting, or, that his conduct was reasonably certain to cause the result complained about by the state."

And the jury was instructed on the requirements of self-defense:

"Instruction No. 9

"Defendant claims his use of force was permitted as self-defense.

"Defendant is permitted to use physical force against another person when and to the extent it appears to him and he reasonably believes such physical force is necessary to defend himself against the other person's imminent use of unlawful force. Reasonable belief requires both a belief by defendant and the existence of facts that would persuade a reasonable person to that belief.

"When use of force is permitted as self-defense, there is no requirement to retreat."

On appeal, Bayha argues the specific burden of proof instruction for his affirmative defense should have also been given. This pattern instruction states:

"The defendant raises *describe the defense claimed* as a defense. Evidence in support of this defense should be considered by you in determining whether the State has met its burden of proving that the defendant is guilty. The State has the burden to disprove this defense beyond a reasonable doubt. The State's burden of proof does not shift to the defendant." PIK Crim. 4th 51.050 (2020 Supp.).

As mentioned, the State concedes the district court erred in failing to give this instruction but contends this error did not impact the jury's verdict.

*Was the failure to give the instruction clearly erroneous?*

Bayha concedes that our Supreme Court found in *State v. Cooperwood*, 282 Kan. 572, 581, 147 P.3d 125 (2006) that "if a general burden of proof instruction is provided to a jury, failure to separately instruct on the burden of proof associated with affirmative

5

defenses is not clearly erroneous." But he claims *Cooperwood* was wrongly decided. He asserts that there is nothing in the general burden of proof instruction (here, jury instruction No. 6) making it clear that the State would have to disprove his affirmative defense beyond a reasonable doubt.

Our Supreme Court has soundly and repeatedly rejected the same argument Bayha makes here, finding a district court's failure to give the instruction at issue is not clear error when the instructions as a whole ensure the court accurately conveyed the law. See *State v. Buck-Schrag*, 312 Kan. 540, 553, 477 P.3d 1013 (2020) (finding district court did not err based on the whole of the instructions but noting instructions "could have been clearer if they parroted the language of the statute by explicitly informing the jury that the State had to disprove the self-defense theory beyond a reasonable doubt"); *State v. Staten*, 304 Kan. 957, 967, 377 P.3d 427 (2016) (while district court erred in failing to give burden of proof instruction for the affirmative defense of self-defense, it was not clear error based on "the instructions as a whole as well as the nature of the evidence supporting Staten's claim of self-defense"); *Cooperwood*, 282 Kan. at 580-82 (affirming holding in *State v. Crabtree*, 248 Kan. 33, 40, 805 P.2d 1 [1991], after reviewing much of the above precedent, to find district court did not commit clear error when it failed to provide instruction on State's burden when defendant raised an affirmative self-defense claim); *State v. Sperry*, 267 Kan. 287, 294-95, 978 P.2d 933 (1999) (finding instructions as a whole covered the subject of the burden of proof when a self-defense instruction was given), *disapproved of on other grounds by State v. King*, 288 Kan. 333, 344-45, 204 P.3d 585 (2009); *Crabtree*, 248 Kan. at 40-41 (finding trial court should have given instruction on State's burden, but "when the instructions are considered as a whole and in light of the facts of the case, we cannot say the failure to give [the instruction] was clearly erroneous"); *State v. Osbey*, 238 Kan. 280, 286, 710 P.2d 676 (1985) ("Error cannot be predicated on the refusal to give specific instructions where those which were given cover and include the substance of those refused.").

6

Similarly, we find the instructions as a whole given to the jury in Bayha's case accurately conveyed the law. In addition to the instructions we've already recounted, during opening statements the district court told the jury:

> "It is your duty to presume that the defendant is not guilty of the crime charged. The law requires the State to prove the defendant guilty beyond a reasonable doubt. The burden is always on the State. The defendant is not required to prove innocence or to produce any evidence."

And then before closing statements, the district court reminded the jury, "The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty unless you are convinced from the evidence that he is guilty." The instructions as a whole made it clear that the State had the burden to prove Bayha guilty and that Bayha did not have the burden to prove he was not guilty because he acted in self-defense.

Despite these jury instructions, Bayha contends the failure to provide the burden of proof instruction impacted his verdict based on (1) statements the prosecutor made in closing and (2) jury conduct in his first trial.

First, Bayha claims the prosecutor confused the issue of who had the burden of proof in closing when he said: "He claims that his use of force was permitted as self-defense. So what do you need in order for something that you did that was otherwise illegal, what do you need to show in order for that to be legal as self-defense?" Bayha construes these statements as misstating the burden of proof because he did not have to prove that his actions were legal—the State had the burden to prove that his actions were illegal. He relies on these same statements to support his claim of prosecutorial error. But, as explained later, Bayha takes the prosecutor's statements out of context and we do

7

not find that the statements obscured the instructions the jury was given about the State's burden to prove Bayha was guilty.

As for the jury's conduct in Bayha's first trial, he claims that since it asked a question about how to evaluate self-defense and hung on the battery charge against Officer Allen, this means it was "seriously considering" his claim of self-defense. Bayha argues that because the first jury—not the jury who convicted him—was confused about how the self-defense instruction applied, there is a real possibility that one or more jurors in his second trial would have had reasonable doubt about whether the State had disproved his claim of self-defense if the burden of proof instruction had been given.

But Bayha fails to draw an adequate connection between the two trials or juries. He does not explain how 12 new jurors would have shared the same view as the previous jurors, especially when the jurors in his second trial expressed no confusion over the instructions and convicted him.

In the end, the district court adequately informed the jury of the State's general burden, which necessarily included Bayha's affirmative defense. When the instructions here are considered as a whole, we cannot say the failure to give Bayha's requested instruction was clearly erroneous. The jury considered Bayha's testimony about his defense, found it not credible, and determined that the State had met its burden of proving Bayha guilty. Bayha has not firmly convinced us that the jury would have reached a different verdict if the missing instruction had been given.

*The prosecutor's comments were not error but, even assuming they were, the comments were harmless.*

Next, Bayha argues the prosecutor committed reversible error by misstating the law in closing, focusing on two remarks. First, as mentioned, he claims the prosecutor

8

suggested Bayha had to prove his affirmative defense of self-defense. Second, Bayha argues the prosector erred when he said, "[W]as it reasonable for him to believe that a squeeze of the buttocks would escalate into something that was going to put him in danger?" Bayha claims this statement misstated the law because it presupposes that a person cannot use appropriate force to stop improper touching.

*Standard of Review and Relevant Legal Framework*

Kansas appellate courts apply a two-step framework when reviewing claims of prosecutorial error. For step one, an appellate court "considers whether the prosecutor exceeded the wide latitude prosecutors are given to conduct the State's case in a manner that does not offend a defendant's constitutional right to a fair trial." *State v. Arroyo*, 321 Kan. 663, Syl. ¶ 1, 583 P.3d 909 (2026). And "[t]he court does not consider any statement in isolation but rather looks to the context to determine whether error occurred." 321 Kan. 663, Syl. ¶ 1.

Then for the second step, our Supreme Court has said: "[I]f the court finds error, the State must show beyond a reasonable doubt that the error did not affect the trial's outcome in light of the whole record, i.e., that there is no reasonable possibility that the error contributed to the verdict." 321 Kan. 663, Syl. ¶ 1. Kansas appellate courts may consider the district court's jury instructions and the strength of the evidence against the defendant in determining whether any prosecutorial error is harmless. See *State v. Blevins*, 313 Kan. 413, 435-37, 485 P.3d 1175 (2021).

No objection is required to preserve the question of prosecutorial error for appellate review. 313 Kan. at 428. But our Supreme Court has said: "'[T]he presence or absence of an objection may figure into our analysis of the alleged misconduct.'" *State v. Sean*, 306 Kan. 963, 974, 399 P.3d 168 (2017) (quoting *King*, 288 Kan. at 349).

9

*The prosecutor did not err by improperly shifting the burden in closing.*

As to the first point, Bayha interpreted the remarks as the prosecutor telling the jury that Bayha had to prove his affirmative defense of self-defense instead of the State having to disprove it. But when considering the remarks in context, we do not read the record this way.

In this portion of his closing, the prosecutor began by discussing what the State needed to prove to show the elements of the charge of battery of a correctional officer. The prosecutor went through the elements of the charge one by one and discussed the evidence which supported each element. He then discussed the self-defense instruction, framing the issue through a rhetorical question about what elements the jury needed to find to conclude Bayha acted in self-defense. The prosecutor emphasized that Bayha must have reasonably believed the use of force was necessary and then he explained how the evidence did not meet that standard. The prosecutor never said Bayha needed to prove his affirmative defense—in context, he was discussing what the State needed to show "[i]n proving [its] case."

As the State points out, the prosecutor was using the law given in the jury instruction to challenge Bayha's self-defense theory by focusing on the reasonableness of Bayha's actions. He did not shift the burden of proof to Bayha but merely clarified that Bayha needed to have both a subjective and objective reasonable belief that self-defense was necessary. See K.S.A. 21-5222(a) ("A person is justified in the use of force against another when and to the extent it appears to such person and such person reasonably believes that such use of force is necessary to defend such person or a third person against such other's imminent use of unlawful force."). We do not find that the prosecutor misstated the law.

10

*Bayha does not develop his second point of prosecutorial error.*

As for Bayha's second point, we find he has slightly misstated the prosecutor's remarks. Bayha states in his brief: "Furthermore, the prosecutor argued that [Bayha] could not be justified in using force against the officer unless 'it was reasonable for him to believe that a squeeze of the buttocks would escalate into something that was going to put him in danger?'" But the full quote from the trial transcript reads:

> "And so was it reasonable? Was it reasonable to believe that that level of force was necessary to prevent further harm? So if he actually believed that his buttock had been grabbed in the setting that he was in, in a hospital setting, in the presence of a nurse and the presence of another guard who was keeping a very close eye on things, was it reasonable for him to believe that a squeeze of the buttocks would escalate into something that was going to put him in danger?"

The prosecutor was not setting the bar improperly high but was, again, focusing on the reasonableness of Bayha's belief—which is an element of his self-defense claim.

*Even assuming prosecutorial error, we find it harmless.*

While we do not find Bayha has shown the prosecutor erred in closing, even if he had, we find the errors were harmless. As the State notes, the central issue in this case was whether self-defense excused Bayha's contact with Officer Allen. Bayha's testimony was the only evidence provided to support this claim.

Officer Allen denied touching Bayha "in any way." And he clarified that before he had contact with Bayha, Bayha "started moving forward on the gurney, trying to get off after I gave him direct orders to stop." And the nurse's testimony corroborated Officer Allen's account. She said Bayha was supposed to put his shirt back on, but he charged the first officer and pushed (or appeared to push) the other officer. Other than removing

Bayha's handcuffs before his examination, she denied seeing Officer Allen touch Bayha "in any way" before the incident, recalling that Officer Allen was at the foot of the bed when Bayha started towards him.

The correctional officer who investigated the incident testified that Bayha told him that Officer Allen touched Bayha on the buttocks while trying to restrain Bayha, when they were wrestling around on the ground. He also testified that Bayha did not say he was acting in self-defense and that Bayha did not make his complaint against Officer Allen until several months later.

Bayha again relies heavily on the first jury's question and inability to reach a verdict in his first trial to argue the comments were not harmless. But we fail to see how that jury's reaction to the evidence presented in that trial is relevant to the verdict rendered by a different jury in his second trial. The second jury clearly weighed Bayha's testimony against the testimony of the other witnesses and found it was not credible, expressing no confusion about how to consider his self-defense claim.

Given the weight of the evidence, we find the State has shown the prosecutor's statements did not impact the verdict, even if erroneous. See *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021).

*The district court did not abuse its discretion when it declined to appoint substitute counsel.*

Next Bayha argues that the district court erred by failing to grant his appointed counsel's motion to withdraw because he claimed the communication between them completely broke down.

*Standard of Review and Relevant Legal Framework*

Kansas appellate courts review a district court's denial of a motion for substitute counsel for an abuse of discretion. *State v. Turner*, 318 Kan. 162, 170, 542 P.3d 304 (2024). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Bilbrey*, 317 Kan. 57, 63, 523 P.3d 1078 (2023). As the party asserting the district court erred, Bayha bears the burden of showing an abuse of discretion occurred. *State v. Keys*, 315 Kan. 690, 708, 510 P.3d 706 (2022); see *Turner*, 318 Kan. at 170-71.

The United States and Kansas Constitutions guarantee criminal defendants a right to the effective assistance of counsel. Yet they do not contain a corresponding right which entitles an offender to the appointment of counsel of their own choosing. *State v. Breitenbach*, 313 Kan. 73, 90-91, 483 P.3d 448 (2021).

When a criminal defendant expresses dissatisfaction with his or her court-appointed attorney, the district court has a duty to inquire further into the claims and may appoint substitute counsel when the facts and circumstances demonstrate such action is necessary. *State v. Pfannenstiel*, 302 Kan. 747, 760-61, 357 P.3d 877 (2015). To warrant substitute counsel, a defendant has the burden to show justifiable dissatisfaction with their current attorney. *Turner*, 318 Kan. at 171. That burden can be satisfied with evidence that demonstrates "'a conflict of interest, an irreconcilable conflict, or a complete breakdown in communications between counsel and the defendant.'" *Breitenbach*, 313 Kan. at 90 (quoting *State v. Sappington*, 285 Kan. 158, 166, 169 P.3d 1096 [2007]). If the district court has "'a reasonable basis for believing the attorney-client relation has not deteriorated to a point where appointed counsel can no longer give effective aid in the fair presentation of a defense, the court is justified in refusing to appoint new counsel.'" *Sappington*, 285 Kan. at 166 (quoting *State v. Ferguson*, 254 Kan. 62, 70, 864 P.2d 693 [1993]). In those instances when "the defendant's dissatisfaction

13

emanates from a complaint that cannot be remedied or resolved by the appointment of new counsel—such that replacement counsel would encounter the same conflict or dilemma—the defendant has not shown the requisite justifiable dissatisfaction." *Breitenbach*, 313 Kan. at 90-91.

*Bayha cannot demonstrate the district court abused its discretion.*

Before trial, Bayha's counsel moved to withdraw, claiming communication between him and Bayha had broken down. His counsel explained that he and Bayha disagreed over strategic decisions in the case, citing several examples. The State did not oppose Bayha's counsel's motion to withdraw.

At the hearing on the motion, Bayha's counsel reiterated that Bayha wanted him removed and discussed their disagreements over strategic decisions in the case. Similarly, Bayha told the district court that he and his counsel did not "see eye to eye on a lot of things" and that his counsel had not subpoenaed two witnesses that he claimed he needed. The district court asked Bayha's counsel, "[Y]ou apparently don't think those witnesses are necessary?" And Bayha's counsel told the district court:

> "No, Judge. He is, in my opinion, wanting to litigate issues that he's had at the facility. The act that he's accused of took place at the hospital away from the facility. He wants to argue that they're connected. I don't see how they are, and that's one of the reasons why we don't see eye to eye."

The district court then explained to Bayha's counsel:

> "Well, I don't understand how that's any kind of a problem. You've been appointed to represent him. He wants you to take a position you apparently disagree with. You have to exercise your professional judgment and proceed with what you think's right. If I let you withdraw and appoint a new lawyer that—he's just going to have the

same problem. If it's a—if it's an inappropriate argument, the next attorney's just going to have the same problem, so why would I let you withdraw?"

The district court then reminded Bayha that he had the right to hire private counsel if he wished, but it denied the motion to withdraw.

On appeal, Bayha points to essentially five instances that he claims demonstrate a breakdown in communication between him and his counsel sufficient to justify replacement counsel:

- His counsel told the district court in the motion to withdraw and at the related hearing that communication had broken down between him and Bayha.
- At pretrial conferences before both trials, Bayha's counsel told the district court he had been unable to communicate with Bayha.
- Bayha's counsel disagreed with Bayha's defense and did not subpoena witnesses Bayha wanted to testify at his trials.
- At the pretrial conference before the second trial, Bayha's counsel asked for a continuance but the district court denied the request.
- During the second trial, Bayha asked to have his counsel removed because he was not asking questions in voir dire that Bayha wanted him to ask.

On review, we do not find these instances show the district court abused its discretion in denying the motion. First, Bayha ignores important facts regarding some of these instances. For example, at the pretrial conferences, his attorney was not describing a disagreement with Bayha but recounting how the jail authorities had prevented him from communicating with Bayha due to Bayha's actions at the facility. Bayha was present at both pretrial conferences and did not disagree with his attorney's representations as to

15

why they could not communicate. He also fails to explain how another attorney would not face the same communication problem.

As for the denial of the motion to continue the second trial, Bayha objected to the continuance. He also told the district court he had been able to talk to his attorney. The district court pointed out that Bayha's counsel did not need a continuance to wait for a transcript of the first trial because he was able to try the case once before and did not need a transcript then, so the court felt he could try it again without one. We fail to see how Bayha's claim that the district court "forced" his counsel to proceed to trial is supported by the record or demonstrates a breakdown in communication requiring the appointment of new counsel.

The rest of the instances involve disagreements over strategic decisions in the case, not a failure to communicate or justifiable dissatisfaction with his counsel. And, as the district court noted, Bayha fails to explain why a new attorney would have viewed his case differently—other than simply to state that "[s]ometimes attorneys and clients don't gel." Bayha implies that the district court had to find that "*no* other attorney could possibly have a better relationship" with him before denying the motion to withdraw, but that is not the standard.

Bayha alleges next that his counsel's representation was inadequate, which he contends shows a breakdown in communication. To support this argument, he says his counsel:

- did not file any defense jury instructions,
- did not mention Bayha's requested self-defense instruction at the first trial until after the State requested it,
- did not file a motion for departure sentence or for alternative sentencing,

16

- joined the prosecutor in a request that Bayha receive a presumptive sentence, and
- did not conduct any investigations or interviews.

But other than the disagreement over Bayha's self-defense claim (which we already addressed as a strategic decision), Bayha provides no evidence that he and his attorney disagreed over these decisions. That is, he does not claim he asked his attorney to request other jury instructions or file any sentencing motions. Nor does he provide any reason why these strategic choices were incorrect or evidenced inadequate representation. For example, he simply makes a conclusory statement that his attorney did not "conduct[] *any* investigation or interviews," but provides no evidence to support this statement. We fail to see how these actions (or alleged inaction) demonstrate justifiable dissatisfaction with appointed counsel.

In the end, Bayha's argument on appeal does not address the district court's reasoning for denying the motion. Instead, he cherry-picks favorable facts and phrases that do not provide the complete picture. The record shows the district court probed for the reasons behind the allegations of a breakdown of communication and, once it determined the nature of the disagreements between Bayha and his counsel, found them insufficient to show justifiable dissatisfaction. We find no abuse of discretion in the decision to deny the motion to withdraw.

*The district court did not err in making its jail time credit determination.*

Lastly, Bayha contends the district court failed to award him jail time credit for all the time he spent incarcerated pending the disposition of his case. He claims he was incarcerated for almost the entire time between charging on August 8, 2023, and sentencing on October 15, 2024, other than a few weeks when he was out on bond. He seeks jail credit in this case for: (1) the time he continued to be incarcerated in prison—

serving another sentence for a previous criminal case—while this case was pending, and (2) the time he was released on bond in this case but held in custody on charges in a third case.

The resolution of this issue involves statutory interpretation, which presents a question of law over which appellate courts have unlimited review. *State v. Daniels*, 319 Kan. 340, 342, 554 P.3d 629 (2024).

> *Bayha is not entitled to jail credit for time when he was serving a preexisting prison sentence.*

Our court addressed whether jail credit should be awarded when a defendant is serving a preexisting prison sentence and then commits an offense while in custody in *State v. Martin*, 66 Kan. App. 2d 173, 577 P.3d 667 (2025), *rev. granted* 321 Kan. 793 (2026). Like Bayha, Martin was charged with battery of a corrections officer while already an inmate at Lansing Correctional Facility. We found Martin was not entitled to jail credit, noting: "When a defendant is serving a preexisting prison sentence following a criminal conviction, K.S.A. 2019 Supp. 21-6615(a) does not entitle the defendant to credit when new criminal charges are brought against the defendant for a criminal offense committed while incarcerated." 66 Kan. App. 2d 173, Syl. ¶ 3.

Bayha contends *State v. Ervin* held that K.S.A. 21-6615(a) requires a district court to award a defendant jail time credit for all time spent incarcerated pending the disposition of his case. See 320 Kan. 287, 311-12, 566 P.3d 481 (2025). He claims he is entitled to an award of jail time credit for each day that he spent incarcerated pending the disposition of his case regardless of whether he received an allowance for some or all that time against a sentence in another case and regardless of why he was incarcerated.

But as we observed in *Martin*:

"[I]n *Ervin*, the Kansas Supreme Court did not address a scenario involving an inmate who was serving a sentence following a prior criminal conviction and then committed a new crime while incarcerated in prison. Moreover, we do not find it appropriate to expand the holding in *Ervin* to situations involving inmates who commit new criminal offenses while in prison serving sentences arising out of prior criminal convictions. Instead, we find that in order to receive jail time credit under K.S.A. 2019 Supp. 21-6615(a), the incarceration must be connected to the case in which the defendant is seeking to receive credit.

"We find the factual circumstances in this case distinguishable from those in *Ervin*. Unlike this case, the defendant in *Ervin* was not serving a prison sentence for prior crimes. Rather, he was being held in jail on two separate criminal cases while awaiting disposition of the case that was the subject of his appeal. In other words, the defendant in *Ervin* was in jail 'pending the disposition of' the criminal cases for which he was incarcerated. [Citation omitted.]" 66 Kan. App. 2d at 175-76.

Bayha was already serving prison time at the Lansing Correctional Facility for his sentence on another conviction when he was charged in this case. He admits he remained incarcerated for his prior conviction until at least May 31, 2024. We agree with the reasoning in *Martin* and find Bayha is not entitled to jail credit for this time.

Bayha also admits that the record reflects that he filed a recognizance bond on June 5, 2024. While he claims uncertainty on appeal about whether he was incarcerated between May 31 and June 5, 2024, he nonetheless seeks jail credit for any time that he was. But the record reflects that the district court awarded him jail credit for time he spent incarcerated between May 22, 2024, and June 4, 2024, so he already received the credit he is seeking for this time.

*Bayha is not entitled to jail credit for time when he was released on bond in this case but incarcerated on other charges while this case was pending.*

As the State points out, after Bayha was released on bond in June 2024, he was charged with new crimes in Johnson County. Bayha was apparently incarcerated in

19

Johnson County on these charges from July 2024 until sentencing in this case, other than about nine days when he was incarcerated in the Leavenworth County jail. These nine days, for which he received jail credit in this case, appear to coincide with his jury trials in this case.

Bayha seeks jail credit for the time he was incarcerated in Johnson County while this case was pending. But, as the State points out, Bayha was out on bond in this case during that time. Our court has also addressed this situation.

In *State v. Hill*, 66 Kan. App. 2d 177, 178-79, 577 P.3d 670 (2025), *rev. granted* 321 Kan. 792 (2026), we addressed whether a defendant is entitled to jail time credit under K.S.A. 2021 Supp. 21-6615(a) when a defendant has been released on bond and remains on bond in that case until sentencing. We determined that "in order to receive jail time credit, the incarceration must be tied to the case in which the defendant is seeking to receive credit." 66 Kan. App. 2d at 180. When we applied this principle to Hill's case, we explained:

> "Here, Hill was released from the Crawford County jail on this case after 90 days and he remained on bond on this case when he was subsequently jailed in Bourbon County on an unrelated case. It is undisputed that the district court appropriately awarded Hill with 90 days' credit for the time he spent incarcerated in the Crawford County jail prior to being released on bond in this case. Accordingly, because Hill was not being incarcerated in the Bourbon County jail until after being released on bond from the Crawford County jail, we find that he is not entitled to additional jail time credit in this case.
>
> "We do not find that *Ervin* supports Hill's position and it would be inappropriate to expand its holding in an attempt to justify an award of jail time credit for a subsequent incarceration after a defendant posts bond, is released from jail, and remains on bond until sentencing in the case for which the defendant is seeking additional credit. Likewise, we do not find it appropriate to read such a requirement into K.S.A. 2021 Supp. 21-6615(a), which provides that a person convicted of a crime is entitled to credit

20

only for time 'spent incarcerated *pending the disposition of the defendant's case*.' (Emphasis added.) Finally, we observe that defendants released on bond are not incarcerated.

"In summary, there is no dispute that Hill was released on bond from the Crawford County jail 90 days following his arrest in this case. There is also no dispute that he remained on bond in this case until he was sentenced. Furthermore, it is undisputed that the district court has already awarded Hill with credit for the 90 days in which he was incarcerated in the Crawford County jail before bonding out. Consequently, when he was subsequently incarcerated in the Bourbon County jail in an unrelated case, Hill was no longer incarcerated in this case, and he is not entitled to any additional jail time credit. [Citations omitted.]" *Hill*, 66 Kan. App. 2d at 180-81.

We also denied jail credit to a defendant who was out on bond in one case but incarcerated in an unrelated case pending disposition of the first case in *State v. Hekekia-Dixon*, No. 127,216, 2025 WL 2886609 (Kan. App. 2025) (unpublished opinion), *rev. granted* 321 Kan. 792 (2026). We found neither *Ervin* nor K.S.A. 2021 Supp. 21-6615(a) require a court to award jail credit for days the defendant is incarcerated solely in an unrelated case. 2025 WL 2886609, at *3.

Like we found in *Hill* and *Hekekia-Dixon*, we find Bayha is not entitled to jail credit in this case for time he spent incarcerated in Johnson County solely for his Johnson County case.

For these reasons, we find the district court did not err in awarding jail time credit.

Affirmed.

21